IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

RONALD S. EOVALDI,               §
                                 §
          Plaintiff,             §
                                 §
v.                               §      CIVIL ACTION NO. H-09-2489
                                 §
MICHAEL J. ASTRUE,               §
COMMISSIONER, SOCIAL             §
SECURITY ADMINISTRATION,         §
                                 §
          Defendant.             §

## MEMORANDUM OPINION

Pending before the court[1] are Defendant's Motion for Summary Judgment (Docket Entry No. 13) and Plaintiff's Motion for Summary Judgment (Docket Entry No. 15).  The court has considered the motions, all relevant filings, and the applicable law.  For the reasons set forth below, the court **GRANTS** Defendant's Motion for Summary Judgment (Docket Entry No. 13) and **DENIES** Plaintiff's Motion for Summary Judgment (Docket Entry No. 15).

## I.   Case Background

Plaintiff Ronald S. Eovaldi ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration ("Defendant" or "Commissioner") regarding Plaintiff's claim for disability benefits under Title II of the

---

[1]   The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docket Entry Nos. 9-10.

1

Social Security Act ("the Act"), 42 U.S.C. § 401 et seq.

## A.    Factual History

Plaintiff was born on July 5, 1959, and was thirty-eight years old on June 10, 1998, the date of the alleged onset of the disability.[2]  Plaintiff completed high school and one semester of college.[3]  Prior to June 10, 1998, Plaintiff worked as a sheet metal worker, bartender, and lead computer operator.[4]  Plaintiff was involved in a motor vehicle accident on May 5, 1995.[5]

### 1.    The Accident

In May 1995, Plaintiff was involved in an automobile accident in which he sustained facial and splenic lacerations; multiple facial fractures; a right acetabular fracture; fractures of his pelvis, rib, right hand, and left ulnar; and dislocation of the right femur at the hip.[6]

### 2.    Pelvic Fracture, Hip Replacements, and Side Effects of Anesthesia

In medical records dated May 6, 1995, Dr. Alfred B. Watson examined the pelvic area and noted a fracture of the right

---

[2]    Tr. 10, 12, 146, 155. But see Tr. 23-25 (ALJ agreeing to change Onset Date from June 10, 1998, to May 5, 1995).

[3]    Tr. 20.

[4]    Tr. 22, 132, 156.

[5]    Tr. 21, 25. But see Tr. 319 (stating motor vehicle accident took place May 6, 1995).

[6]    Tr. 274-275, 277, 282, 306-308, 484.

acetabular region.[7]  An operative record dated May 9, 1995, stated
that Plaintiff had a hip reduction performed and a reconstruction
plate fixed over the posterior rim fragment of the right acetabular
fracture.[8]  The record states that there were no complications at
that time.[9]  In an Attending Physician's Statement dated November
1, 1996, Thomas J. Parr, M.D., ("Dr. Parr") noted that Plaintiff
had a right total hip replacement following an infection resulting
from the reconstruction plate installed at his hip.[10]  Dr. Parr also
noted in the Functional Capacity Form on November 1, 1996, that due
to the right total hip replacement, Plaintiff was unable to walk
distances, climb stairs, or lift more than twenty pounds.[11]  In this
form, Dr. Parr indicated that Plaintiff, with rest, could sit for
eight hours and stand and walk for one hour in an eight-hour
workday.[12]

In an orthopedic evaluation on May 19, 2006, Glenn C. Landon,
M.D., ("Dr. Landon") recommended that Plaintiff undergo a revision
surgery for his right hip, noting that Plaintiff's cemented hybrid

---

[7]     Tr. 275.

[8]     Tr. 320-321.

[9]     Tr. 321.

[10]    Tr. 569.  The medical records prior to December 31, 2000, are
available only from May 6, 1995, to May 16, 1995.  Tr. 197-356.

[11]    Tr. 568.

[12]    Tr. 567.

hip replacement showed signs of wear.[13]   Dr. Landon also noted Plaintiff's antalgic gait, his history of infection from the pelvic fracture, as well as his subsequent hip replacement and debridements.[14]   He then stated that Plaintiff was currently infection free.[15]

On August 17, 2006, Plaintiff underwent a surgery in which Dr. Landon performed a revision right total hip arthroplasty.[16]   In a discharge summary from St. Luke's Episcopal Hospital dated August 23, 2006, Khanh T. Nguyen, M.D., ("Dr. Nguyen") detailed Plaintiff's nausea and vomiting, noting that it was likely due to the anesthesia and narcotics that Plaintiff received for the surgery.[17]   Dr. Nguyen also noted that Plaintiff had a history of sensitivity to anesthesia after surgeries.[18]   Plaintiff indicated in a medical history report dated August 31, 2007, that he had undergone nine hip operations to date.[19]

### 3.   Neuropathy and Leg Weakness

It was noted in a report dated May 9, 1995, that Plaintiff

---

[13]   Tr. 401.

[14]   Tr. 401.

[15]   Tr. 401.

[16]   See Tr. 395, 440.

[17]   Tr. 435.

[18]   Tr. 435.

[19]   Tr. 531.

underwent left leg surgery in 1979.[20]  Following the accident in 1995, in addition to the reduction and fixation of his right acetabular fracture, Plaintiff had splints placed in his right hand, left forearm, and right lower leg.[21]  Plaintiff's discharge summary on May 16, 1995, stated that after the surgery, Plaintiff had a few neurologic deficits remaining in his right foot: decreased sensation on the lateral aspect of the foot, weakness about the ankle, and mild foot drop with weakness in dorsiflexion.[22]

In response to an inquiry form from the Disability Claim Division dated September 17, 1996, Dr. Parr, Plaintiff's attending physician, noted that Plaintiff had right sciatic neuropathy, with pain and paralysis, and left peroneal neuropathy, otherwise known as foot drop.[23]  Dr. Parr further stated that Plaintiff could still perform sedentary work if he was permitted to change positions frequently.[24]

Dr. Parr listed in an Attending Physician's Statement on November 1, 1996, that Plaintiff's medications included Prilosec, Sinequan, insulin, and Tylenol.[25]  Dr. Parr also stated in his

---

[20]   Tr. 312.

[21]   Tr. 238.

[22]   Tr. 239.

[23]   Tr. 571.

[24]   Tr. 571.

[25]   Tr. 569.

Functional Capacity Form from that same date that Plaintiff had some physical restrictions due to his bilateral neuropathy of the lower extremities.[26]  He noted that Plaintiff had limited ambulation with a walker but was able to sit.[27]  Dr. Parr also indicated in the Functional Capacity Form that due to Plaintiff's neuropathy, he was unable to walk distances, climb stairs, or lift more than twenty pounds.[28]  However, Dr. Parr indicated that Plaintiff, with rest, could sit for eight hours and stand and walk for one hour in an eight-hour workday.[29]

### 4.   High Blood Pressure

Prior to the date last insured on December 31, 2000, there was no record of high blood pressure. In an anesthetic evaluation dated May 8, 1995, it was noted that Plaintiff did not have hypertension.[30]  The pre-operative nursing assessment of May 8, 1995, also indicated that Plaintiff had no history of hypertension.[31]  Dominic G. Shreshta, M.D., ("Dr. Shreshta") noted in a medical report on October 1, 2005, that Plaintiff had "new onset hypertension," for which Dr. Shresta prescribed a daily

---

[26]    Tr. 567.

[27]    Tr. 569.

[28]    Tr. 568.

[29]    Tr. 567.

[30]    Tr. 311.

[31]    Tr. 311.

6

dosage of eighty milligrams of Diovan.[32]  A St. Catherine's Hospital registration sheet dated December 3, 2005, indicates that upon admission, Plaintiff was diagnosed with hypertension.[33]

**5.    Neck, Back, Hip, Leg, and Pelvic Pain**

Plaintiff noted in a medical information form dated July 24, 2007, that a pinched disk had been causing him lower back pain since 1993.[34]  In an Attending Physician's Statement dated November 1, 1996, Dr. Parr noted that Plaintiff's medication included Tylenol.[35]  A report dated November 15, 2006, stated that Plaintiff had bilateral spondylolysis of the lumbar spine and degeneration of the lumbosacral disc.[36]  Dr. Landon noted in a June 2007 medical report that Plaintiff's hip was "not bothering him" but that Plaintiff had had strong back pain "off and on for years."[37]  In the report, Dr. Landon identified mild narrowing of the lumbar spine from Plaintiff's lumbar radiographs.[38]  In a report from the Kelsey-Sebold Clinic dated August 31, 2007, Plaintiff noted intermittent pain in his lower back, right buttock, and right leg.[39]  In another

---

[32]    Tr. 360.

[33]    Tr. 414.

[34]    Tr. 535.

[35]    Tr. 569.

[36]    Tr. 374.

[37]    Tr. 368.

[38]    Tr. 368.

[39]    Tr. 530.

report from the Kelsey-Sebold Clinic dated May 6, 2008, Plaintiff noted having intermittent pain in his lower back and right hip but did not note neck or pelvic pain.[40]   Plaintiff rated the normal severity of pain at three out of five and listed his medications as Vicodin, Lisinopril, Gabapentin, insulin, and Skelaxin.[41]   In a medical report dated October 30, 2007, Plaintiff reported having intermittent pain in his lower back and buttocks.[42]

On May 19, 2006, Plaintiff also sought care for his right hip pain, and Plaintiff rated the pain at three on a scale of five.[43] On January 25, 2008, Plaintiff reported having intermittent pain in his lower back, pelvis, and right hip.[44]  An August 1, 2008 report included "neck pain" as a new issue since his last visit to the Kelsey-Seybold Clinic.[45]  Meiyu Lai, M.D., ("Dr. Lai") wrote in the clinical notes that Plaintiff wanted his "neck pain looked at."[46] Plaintiff noted pain in his lower back, neck, and right buttock but did not note pelvic or hip pain.[47]  Plaintiff also stated that his current medications included Gabapentin, Tizanidine, Vicodin,

---

[40]    Tr. 500.

[41]    Tr. 500.

[42]    Tr. 523.

[43]    See Tr. 399.

[44]    Tr. 518.

[45]    Tr. 494.

[46]    Tr. 494.

[47]    Tr. 494.

8

insulin, and Lisinopril.[48]   In all these reports, Plaintiff rated his normal episode of pain at two-to-three out of five and a severe episode of pain at five out of five; he reported that the duration of the pain was intermittent rather than constant.[49]

### 6.   Diabetes

In the Attending Physician's Statement filled out by Dr. Parr on November 1, 1996, it was noted that Plaintiff had a history of diabetes mellitus prior to his initial consultation on May 16, 1995.[50]   In a medical report dated October 1, 2005, Dr. Shresta noted that Plaintiff was admitted for nausea, vomiting, and uncontrolled insulin-dependent diabetes mellitus.[51]   The report noted that Plaintiff had not complied with the prescribed use of his Glucometer and had not checked his blood sugar in two months.[52]   Although Dr. Shresta restarted Plaintiff on medication, Plaintiff's blood sugar remained high after twenty-four hours.[53]   Dr. Shreshta recommended diabetic education and continued usage of insulin.[54]

### 7.   Depression

---

[48]     Tr. 494.  Plaintiff's October 1, 2008, medication list stated that Lisinopril was for high blood pressure, Gabapentin and Tizanidine were for back and neck pain, and insulin was for diabetes. Tr. 189.

[49]     Tr. 494.

[50]     Tr. 568.

[51]     Tr. 359-360.

[52]     Tr. 359-360.

[53]     Tr. 359-360

[54]     Tr. 360.

In the Attending Physician's Statement dated November 1, 1996, Dr. Parr wrote that Plaintiff's current supports were his "parents, wife, [and] psychiatrist."[55]  Dr. Parr also noted that Plaintiff's medications included Sinequan.[56]  However, Dr. Parr did not list any mental symptoms or history of treatment for depression in the summary of Plaintiff's medical history.[57]  He stated that Plaintiff was "handling these significant injuries extremely well."[58]  Dr. Parr completed an accompanying Functional Capacity Form, in which he did not recommend any restrictions on emotional activities involving stress or interpersonal relationships.[59]  In an October 1, 2008 medication list, Plaintiff reported that he took Buspirone for depression.[60]

B.    **Procedural History**

Plaintiff filed for disability benefits on May 24, 2007, claiming an inability to work since June 10, 1998, due to nerve pain in both legs from nerve damage, two hip replacements, bilateral foot drop, neuropathy, insulin dependent diabetes, severe

---

[55]    Tr. 569.

[56]    Tr. 569.

[57]    Tr. 568.

[58]    Tr. 567.

[59]    Tr. 567.

[60]    Tr. 189.

back pain, high blood pressure, and arthritis.[61]  Based on his
earnings record, Plaintiff remained insured through December 31,
2000 ("Date Last Insured").[62]  Therefore, the relevant period for
determining Plaintiff's disability status is June 10, 1998, through
December 31, 2000.[63]  In connection with his application for
disability benefits, Plaintiff completed two questionnaires in
which he described his daily activities.[64] He reported having daily
difficulty with mobility, coordination, bending, and stooping.[65]
Plaintiff also reported daily discomfort and pain from his
artificial hip.[66]  To alleviate these problems, Plaintiff would lie
down to rest or take pain medication.[67]  Plaintiff stated that, on
an average day, he mentored his daughter, prepared breakfast and
lunch, undertook light reading, and carried out light housework.[68]

The Commissioner denied Plaintiff's application at the initial
and reconsideration levels.[69]  Disability Determination Services
noted that there was insufficient evidence to establish impairments

---

[61]    Tr. 10, 123, 146.

[62]    Tr. 180.

[63]    Tr. 10.

[64]    Tr. 164-171.

[65]    Tr. 164.

[66]    Tr. 164.

[67]    Tr. 164.

[68]    Tr. 165.

[69]    Tr. 55, 62.

11

or evaluate the mental allegations prior to December 31, 2000, and that Plaintiff's alleged limitations due to physical symptoms were not wholly supported by evidence of record.[70]   In October 2007, Plaintiff requested a hearing before an administrative law judge ("ALJ") of the Social Security Administration.[71]   The ALJ granted Plaintiff's request and conducted a hearing on Oct 30, 2008.[72]   At the hearing, Plaintiff submitted a 2008 disability report which included a medication list.[73]   The ALJ issued an unfavorable decision on Nov 18, 2008.[74]   Plaintiff requested a review of the hearing, and the Appeals Council denied the request on June 19, 2009.[75]   Having exhausted all administrative remedies, Plaintiff brought this civil action for review of the Commissioner's decision.[76]

## 1.   Plaintiff's Testimony

At the ALJ hearing, Plaintiff testified that he was involved in a car accident on May 5, 1995, in which he sustained liver and facial lacerations, a broken pelvis, and injuries to his arms and

---

[70]   Tr. 467-471.

[71]   Tr. 66, 67.

[72]   Tr. 77.

[73]   Tr. 189.  In the list, Plaintiff reported taking Lisinopril for high blood pressure, Gabapentin, Tizanidine, and Hydrocodone for back and neck pain, insulin for diabetes, and Buspirone for depression.   Id.

[74]   Tr. 7.

[75]   Tr. 1.

[76]   Plaintiff's Original Complaint, Docket Entry No. 1.

legs.[77]  Plaintiff stated that he had had nine hip operations since then, the last of which took place in 2006.[78]  Plaintiff stated that in the first operation in 1995, he had a plate installed in his fractured pelvis.[79]   In a subsequent operation, the plate was removed due to an infection.[80]  Plaintiff testified that following this, he had an artificial hip installed and a series of hip debridements performed to remove the "bad tissue."[81]  Subsequently, Plaintiff explained, the artificial hip wore out and had to be replaced in 2006.[82]

Plaintiff stated that he was unable to work due to back pain, hip pain, instability, weakness, and difficulty with thumb coordination, all of which developed from the accident.[83]  He said that he had difficulty walking because his sciatic nerve was severed on the right side and, as a result, he had no feeling from the hip down.[84]   In addition, Plaintiff stated that his nerve was cut on the left side so he had no feeling from the knee down.[85]  He

---

[77]    Tr. 25, 27.

[78]    Tr. 28.

[79]    Tr. 28.

[80]    Tr. 27.

[81]    Tr. 27.

[82]    Tr. 27.

[83]    Tr. 29.

[84]    Tr. 29.

[85]    Tr. 29-30.

13

described falling down several times due to leg weakness, being unable to walk more than fifty yards, and having to wear orthopedic leg braces.[86]  He stated that due to his leg injuries, he spent a large part of the day lying in bed, reading, and watching television.[87]  Plaintiff testified that while he had some nerve regeneration after five years, his legs were still weak and he could only do a minimal amount of walking.[88]  As a result, Plaintiff explained, he still had to lie down for periods ranging from an hour to most of the day.[89]  Plaintiff also stated that he suffered from back pain which worsened when he stood up or bent over.[90]  To alleviate this pain, Plaintiff said that he would lie down or take pain medication.[91]  He reported having taken Vicodin for the past thirteen years.[92]

Plaintiff testified that he would be able to sit for eight hours if he could move and stretch occasionally.[93]  When asked by his attorney if there were any side effects from the medication, Plaintiff stated: "Well, kind of makes you, doesn't help your

---

[86]   Tr. 32.

[87]   Tr. 35.

[88]   Tr. 30.

[89]   Tr. 35.

[90]   Tr. 33.

[91]   Tr. 33.

[92]   Tr. 33.

[93]   Tr. 33.

14

intelligence or your thinking any, taking all of them stupid pills."[94]  Plaintiff also reported that although he took medication for depression while hospitalized in 1996, he was not treated for depression.[95]  Plaintiff stated that at the time of the accident, he had Type I diabetes and was taking insulin to treat it.[96]  Plaintiff's wife also testified at the hearing, stating that Plaintiff would fall due to his unpredictable blood sugar levels.[97]  Plaintiff stated that he did not do housework, although he could prepare easy meals such as sandwiches.[98]

### 2.  Medical Examiner's Testimony

Based on the medical evidence on record, the medical expert, Giao N. Hoang, M.D., ("ME Hoang"), testified that in the accident, Plaintiff sustained multiple facial lacerations and multiple fractures in his hip, pelvis, and left ulna.[99]  ME Hoang also testified that based on his assessment of the record, Plaintiff was suffering from diabetes at the time of the accident.[100]

ME Hoang found that Plaintiff did not meet any listing

---

[94]     Tr. 36.

[95]     Tr. 41.

[96]     Tr. 35.

[97]     Tr. 38-39.

[98]     Tr. 36.

[99]     Tr. 42.

[100]    Tr. 42.

("Listing")[101]   in   the   Social   Security   Act   regulations ("regulations") in 1995.[102]   ME Hoang stated that in 1995, Plaintiff did not meet Listing 9.08 for diabetes because the record provided no evidence of motor neuropathy or repeated instances of hypoglycemia.[103]   He also stated that Plaintiff did not meet Listing 1.07 for fractures of the upper extremities because his ulna fracture healed with no complications.[104]   He reported that although Plaintiff had multiple surgeries for the hip fracture, Plaintiff did not meet Listing 1.06 for fractures of the lower extremities, which requires evidence of nonhealing and inability to ambulate.[105] ME Hoang explained that Plaintiff's fracture had healed, albeit with complications, and Plaintiff maintained the ability to ambulate, although with difficulty.[106]

ME Hoang stated that the combination of Plaintiff's impairments could equal a Listing because of the complications that required removal of the plate in 1996 and replacement of the artificial hip in 2006.[107]   However, ME Hoang pointed out that such

---

[101]   "Listing" refers to impairments listed in Appendix 1 of the Social Security Act regulations.  20 C.F.R. Pt. 404, Subpt. P, App. 1.

[102]   Tr. 44.

[103]   Tr. 43.

[104]   Tr. 43.

[105]   Tr. 43.

[106]   Tr. 43.

[107]   Tr. 44.

a combination of impairments from the accident and diabetes would not equal the Listing until 2006, after the Date Last Insured.[108]

Regarding Plaintiff's residual functional capacity ("RFC"), ME Hoang determined that Plaintiff could do the following: lift ten pounds frequently and twenty pounds occasionally; stand and walk two hours out of an eight-hour day; and sit six hours in an eight-hour day.[109]  ME Hoang determined that Plaintiff could not: climb ropes, scaffolds or ladders; be close to dangerous moving machinery; be at an unprotected height; or use machinery involving foot controls.[110]  ME Hoang determined that nothing in the medical record indicated that Plaintiff would need to spend most of the day lying down.[111]

### 3.   Vocational Expert's Testimony

The vocational expert, Susan Ripance ("VE Ripance"), classified Plaintiff's past work as a computer technician as medium, skilled work.[112]  Based on the RFC assessment, VE Ripance found that an individual with Plaintiff's conditions could perform sedentary, unskilled work such as being an order clerk and a final

---

[108]   Tr. 44.

[109]   Tr. 44-45.

[110]   Tr. 45.

[111]   Tr. 46.

[112]   Tr. 47.

assembler.[113]   VE Ripance also opined that if such an individual were required to lie down to alleviate discomfort for sixty to ninety minutes out of each eight-hour period, such a person would not be able to sustain employment.[114]

### 4.   ALJ's Decision

In his decision on November 18, 2008, the ALJ found that Plaintiff did not meet the requirements for insured status for the relevant period of June 10, 1998, through December 31, 2000.[115]   The ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period and that he had the following severe impairments: nerve damage to both legs; bilateral hip replacements; back pain; diabetes mellitus; and pelvis problems.[116] Based on the medical evidence in the record and Plaintiff's testimony that he had not received treatment for depression, the ALJ determined that Plaintiff's alleged depression was not a severe impairment.[117]

At Step 3, the ALJ found that during the relevant period, Plaintiff's combination of severe impairments did not meet or equal

---

[113]    Tr. 47.

[114]    Tr. 48.

[115]    Tr. 10.

[116]    Tr. 12.

[117]    Tr. 12.

a Listing.[118]  In reviewing the listing criteria, the ALJ found that Plaintiff's injuries did not result in significant limitation in his muscle weakness or range of motion, and the ALJ found no evidence of neuropathy, retinitis proliferans, or acidosis.[119]

The ALJ determined that based on the record, Plaintiff had the following RFC:

> stand and walk two to three hours of an eight-hour workday; sit eight hours of an eight-hour workday; lift and carry 10 pounds frequently, and 20 pounds occasionally; push or pull 10 pounds frequently, and 20 pounds occasionally; never kneel, crouch, crawl, or climb ropes, ladders, or scaffolds; only occasionally climb stairs; no foot controlled machinery; and no working around dangerous moving machinery or at unprotected heights.[120]

The ALJ found that although Plaintiff's impairments could reasonably be expected to produce pain or other symptoms, Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms were not credible where inconsistent with the RFC.[121]  The ALJ noted that the record revealed only a short-term disability and that there were no restrictions recommended by the treating physician.[122]  The ALJ determined that the evidence supported a finding that Plaintiff's

---

[118]    Tr. 12.

[119]    Tr. 12.

[120]    Tr. 13.

[121]    Tr. 14.

[122]    Tr. 14.

pain was not severe and that it was "intermittent, mild to moderate at most, and not of such intensity and persistence that it significantly limited his capacity for work."[123]

The ALJ concluded that Plaintiff was not able to perform his past relevant work as a computer technician because it required medium exertion.[124]   However, the ALJ found that Plaintiff was capable of performing unskilled sedentary jobs that existed in the regional and national economies.[125]   The ALJ then concluded that Plaintiff was not disabled under the Act.[126]

## II.  Legal Standards

### A.  Standard of Review

This court's review of a final decision by the Commissioner denying disability benefits is limited to determining (1) whether substantial record evidence supports the decision and (2) whether the ALJ applied proper legal standards in evaluating the evidence. Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999).

If the findings of fact contained in the Commissioner's decision are supported by substantial evidence, they are conclusive, and this court must affirm.  Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).  Substantial evidence is described

---

[123]     Tr. 14.

[124]     Tr. 15.

[125]     Tr. 15.

[126]     Tr. 16.

as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)); it is "more than a mere scintilla, and less than a preponderance." Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Under this standard, the court must review the entire record but may not reweigh the record evidence, determine the issues de novo, or substitute its judgment for that of the Commissioner. Brown, 192 F.3d at 496.

**B.    Standard to Determine Disability**

In order to obtain disability benefits, a claimant bears the ultimate burden of proving he is disabled within the meaning of the Act.  Wren v. Sullivan, 925 F.2d 123, 125 (5th Cir. 1991). Specifically, under the legal standard for determining disability, the claimant must prove he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can expect to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); see also Greenspan, 38 F.3d at 236. The existence of such disability must be demonstrated by "medically acceptable clinical and laboratory diagnostic findings." 42 U.S.C. §§

21

423(d)(3), (d)(5); see also Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is disabled under this standard, regulations provide that a disability claim should be evaluated according to a sequential five-step process:

(1)  An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

(2)  An individual who does not have a "severe impairment" will not be found to be disabled.

(3)  An individual who meets or equals a Listing will be considered disabled without the consideration of vocational factors.

(4)  If an individual is capable of performing the work he has done in the past, a finding of "not disabled" will be made.

(5)  If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and RFC must be considered to determine if other work can be performed.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994); see also 20 C.F.R. § 404.1520.  The claimant bears the burden of proof on the first four steps of the inquiry, while the Commissioner bears it on the fifth.  Crowley v. Apfel, 197 F.3d 194, 198 (5th Cir. 1999); Brown, 192 F.3d at 498.  The Commissioner can satisfy this burden either by reliance on the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir. 1987).  If the Commissioner satisfies his step-five burden of proof, the burden shifts back to the claimant to prove he cannot perform the work suggested.  Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir.

1991).   The analysis stops at any point in the process upon a conclusive finding that the claimant is disabled or not disabled. Greenspan, 38 F.3d at 236.

### III. Analysis

**A.   Summary of Parties' Arguments**

Plaintiff requests judicial review of the ALJ's decision to deny disability benefits.  Plaintiff contends that the ALJ did not follow proper legal procedures.  Specifically, Plaintiff argues that: (1)(a) the ALJ erred in failing to consider the side effects of Plaintiff's medications on Plaintiff's ability to work; (1)(b) the ALJ erred in failing to make any provision in his RFC assessment for the side effects of Plaintiff's medication; (2) the ALJ erred in failing to properly assess the impact of the non-exertional impairment of pain on Plaintiff's ability to perform sedentary work; (3) the ALJ erred in failing to consider the impact of the non-exertional impairments of pain and weakness on Plaintiff's ability to perform sedentary work on a sustained basis at the RFC assessed; and (4) the ALJ erred in finding that Plaintiff's depression, hypertension, neck pain, and pelvic pain were not severe.[127]  Defendant contends that the ALJ's decision is supported by substantial evidence and should stand.

**B.   Step 2: Finding Plaintiff's Ailments Were Not Severe**

The court first addresses Plaintiff's fourth argument.

---

[127]    Pl.'s Summ. J. Mot. ("PMSJ"), Docket Entry No. 15.

Plaintiff asserts that the ALJ erred at Step 2 of the analysis in finding that Plaintiff's depression, hypertension, neck pain, and pelvic pain were not severe.  At Step 2, the ALJ considers whether the claimant has a medically determinable impairment or combination of impairments that are severe.  20 C.F.R. § 404.1520(c).  Severity is determined by whether the impairment or combination of impairments significantly limits the claimant's ability to perform basic work activities; an impairment or combination of impairments is not severe when evidence establishes only a slight abnormality that would have only a minimal effect on the claimant's ability to work.  20 C.F.R. § 404.1521; Social Security Ruling ("SSR") 85-28, 1985 WL 56856 (S.S.A. 1985); SSR 96-3p, 1996 WL 374181 (S.S.A. July 2, 1996); SSR 96-4p, 1996 WL 374187 (S.S.A. July 2, 1996).

Plaintiff has not met his burden of proving that any of the above-listed ailments significantly limited his ability to perform basic work activities.  The ALJ properly considered the severity of these impairments, and substantial evidence supports this. Regarding Plaintiff's depression, Plaintiff testified at the hearing that although he took medication to improve his mood while hospitalized in 1996, he received no treatment for depression prior to the Date Last Insured on December 31, 2000.[128]  The ALJ's finding is further supported by Dr. Parr's opinion in November 1996 that

---

[128]    Tr. 41.

Plaintiff was handling the significant injuries "extremely well."[129]
In addition, Dr. Parr did not recommend any restrictions on
emotional activities involving stress or interpersonal
relationships, nor did he list any mental symptoms in Plaintiff's
medical history.[130]

Regarding Plaintiff's hypertension, the record does not show
that Plaintiff suffered from hypertension prior to the Date Last
Insured; Dr. Shresta only noted for the first time on October 3,
2005, that Plaintiff had "new onset hypertension."[131]

Although Plaintiff asserts that the ALJ failed to properly
consider Plaintiff's neck and pelvic pain, Plaintiff fails to guide
the court to records supporting this allegation. Subjective
complaints of pain must be "corroborated at least in part by
objective medical testimony." Houston v. Sullivan, 895 F.2d 1012,
1016 (5th Cir. 1989). The medical evidence on record for the
relevant period does not corroborate Plaintiff's claim of neck and
pelvic pain. Although Plaintiff reports taking Gabapentin,
Hydrocodone, and Tizanidine for neck pain, these medications were
prescribed in 2008, after the Date Last Insured.[132] Medications
listed in Plaintiff's disability report filed in 2007 include only
Diovan, insulin, and Vicodin, which Plaintiff reported taking for

---

[129]    Tr. 569.

[130]    Tr. 567.

[131]    Tr. 306.

[132]    Tr. 189.

back pain.[133]   Plaintiff reported in a Kelsey-Sebold Clinic form dated August 1, 2008, that "new issues since the last visit" in early 2008 included "neck pain."[134]   In her medical notes in August 2008, Dr. Lai noted that Plaintiff wanted his neck pain examined.[135] At the hearing, when asked what problems prevented Plaintiff from going back to work in 1996, Plaintiff mentioned his hip pain and back pain but failed to mention the pelvic pain or neck pain which he now argues were severe.[136]   Plaintiff also failed to mention these ailments in his disability application.[137]   In addition, the ALJ gave due consideration to Plaintiff's "pelvic problems" and determined that they were severe.[138]

The court fails to find evidence that the above-listed ailments could be considered severe enough to significantly limit Plaintiff's ability to perform basic work activities, and Plaintiff fails to guide the court to any records in support of his assertion. Accordingly, the court overrules Plaintiff's argument on this point.

**C.   Step 4: Determination of Plaintiff's RFC**

The court next considers Plaintiff's first three arguments that the ALJ committed error both as a matter of law and on the

---

[133]   Tr. 33, 153.

[134]   Tr. 494.

[135]   Tr. 494.

[136]   Tr. 29, 32.

[137]   Tr. 146.

[138]   Tr. 12.

sufficiency of the evidence in his analysis of Plaintiff's RFC.

### 1.   Side Effects of Medication

Plaintiff argues that the ALJ failed to consider the side effects from medications on Plaintiff's ability to work as required by SSR 96-7p, 1996 WL 374186 (S.S.A. July 2, 1996), and SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996).  Plaintiff also argues that the ALJ failed to make any provision in his RFC assessment for these side effects.

SSR 96-7p requires the consideration of factors such as "[t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms."[139]  SSR 96-7p, 1996 WL 374186.  Under SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including the effects of treatment—such as side effects of medication.  SSR 96-8p, 1996 WL 374184.  However, Fifth Circuit case law establishes that a claimant's subjective complaints must be corroborated, at least in part, by objective medical evidence.  See Wren, 925 F.2d at 128-29; 20 C.F.R. § 404.1528; SSR 96-8p, 1996 WL 374184.

At the hearing, Plaintiff claimed that the medications adversely affected his intelligence; however, a review of the record does not reveal any reported side effects from medication during the

---

[139]   See PMSJ, Docket Entry No. 15, p. 4.

relevant period.[140]  At the ALJ hearing, Plaintiff stated that he had taken Vicodin to relieve his back pain for thirteen years; however, Plaintiff did not mention the side effects of Vicodin—dizziness, drowsiness and disorientation—until after the Date Last Insured, when he completed a July 8, 2007 disability report.[141]  Medical doctors' reports are devoid of any mention of Plaintiff's difficulties with his medication.  Plaintiff only reported adverse side effects from anesthesia during surgery in 1996.[142]  In addition, Plaintiff fails to point to evidence that establishes these alleged side effects.  Appropriately, the ALJ did not consider such submissions without corresponding medical testimony or evidence corroborating Plaintiff's alleged side effects of dizziness, drowsiness, and disorientation.

Plaintiff's testimony alone is insufficient to establish that the ALJ should have explicitly addressed the side effects of medication on Plaintiff's ability to do work.  See, e.g., Hickman v. Astrue, No. H-08-1194, 2009 WL 3190471, at *13 (S.D. Tex. Sept. 29, 2009)(unpublished)(stating that there were "no reports that Hickman complained of disabling side effects from medication" during relevant period).  The ALJ's decision is supported by substantial

---

[140]    Tr. 36.  Plaintiff reported drowsiness as side effect of Gabapentin, Tizanidine, Hydrocodone, and Buspirone in a 2008 medication list, but these medications were taken after the date last insured on December 31, 2000.  Tr. 189.

[141]    Tr. 33, 153.

[142]    Tr. 399.

evidence.  This court finds that the ALJ did not err in excluding the alleged side effects of medication in formulating the RFC assessment.

**2.  Pain**

The court next considers Plaintiff's second and third arguments that the ALJ erred in formulating the RFC without considering the effects of the non-exertional impairments of pain and weakness on Plaintiff's ability to work.  When assessing complaints of pain, the ALJ must determine whether there is a medically determinable impairment that is capable of producing that pain.  Ripley v. Chater, 67 F.3d 552, 556 (5th Cir. 1995).  The regulations explain that, when the medical evidence reveals a medically determinable impairment that could produce pain, the analysis must focus on how the intensity and persistence of the pain limits the claimant's capacity for work.  20 C.F.R. § 404.1529(c); see also Wren, 925 F.2d at 128.  In order to evaluate the intensity and persistence of pain, the ALJ considers all available evidence, including medical history, medical signs and laboratory findings, statements of treating providers, and the subjective testimony of the claimant.  20 C.F.R. § 404.1529(c).

**a.  Effect of pain on ability to perform sedentary work**

Plaintiff claims that the ALJ erred in failing to properly consider the non-exertional impairment of pain and its effects on Plaintiff's ability to perform sedentary work.  Despite Plaintiff's claim that the ALJ failed to consider the effects of his pain, the

ALJ addressed the extent of Plaintiff's pain when determining the RFC.[143]  The ALJ found that Plaintiff's impairments could be expected to cause some symptoms but not to the extent claimed.[144]  The ALJ specifically discussed Plaintiff's pain, determining that it was "intermittent, mild to moderate at most, and not of such intensity and persistence that it significantly limited his capacity for work."[145]  The ALJ also explained his findings, pointing to the lack of support in the record for Plaintiff's allegations of disabling pain.[146]  The record reveals that the Disability Determination Service advised that Plaintiff's alleged limitations were not wholly supported by the evidence of record.[147]  The ALJ specifically addressed and agreed with this determination.

Where subjective complaints are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the statements based on the entire case record.  See Hollis v. Bowen, 837 F.2d 1378, 1385 (5th Cir. 1988).  A review of the record indicates that there is substantial evidence to support the ALJ's determination of the RFC and Plaintiff's ability to perform sedentary work.  For example, in November 1996, Dr. Parr reported

---

[143]   Tr. 14.

[144]   Tr. 14.

[145]   Tr. 14.

[146]   Tr. 14.  "A review of the record in this case reveals only a short-term disability and no restrictions recommended by the treating physician." Id.

[147]   Tr. 470.

that Plaintiff could stand and walk one hour and sit eight hours in an eight-hour workday and lift ten pounds.[148]  ME Hoang stated that Plaintiff could stand and walk two hours and sit six hours out of an eight-hour day.[149]  Additionally, ME Hoang stated that Plaintiff could not use machinery involving foot pedals.[150]  The ALJ relied on such medical testimony in formulating the RFC.  In addition, Plaintiff's complaints of having to lie down "most of the day" were not supported by objective medical evidence.[151]  In ME Hoang's review of the medical record, he stated that there was no such recommendation.[152]  Furthermore, the only pain medication taken by Plaintiff that Dr. Parr noted in his assessment was Tylenol.[153]  The Fifth Circuit has held that the lack of need for an inordinate amount of medication is relevant to credibility of alleged pain. Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991). Also, the records for the relevant period between June 10, 1998, and December 31, 2000, do not include the majority of pain allegations or pain treatment; Plaintiff only references his neck, pelvic, and hip pain in records subsequent to 2006.[154]  In these records, he states that

---

[148]     Tr. 13.

[149]     Tr. 45.

[150]     Tr. 45.

[151]     Tr. 46.

[152]     Tr. 46.

[153]     Tr. 569.

[154]     Tr. 399, 494, 518.

his pain is "intermittent."[155]

Plaintiff argues that just as the ALJ in Newton v. Apfel, 209 F.3d 448 (5th Cir. 2000), did not give proper treatment to the plaintiff's non-exertional limitations, the ALJ here did not give proper consideration to Plaintiff's non-exertional limitations. This court disagrees.   Unlike the plaintiff in Newton, who was hospitalized for systemic lupus erythematosus ("SLE") flare-ups and complained of non-exertional impairments of pain and weakness that were consistent with a diagnosis of SLE, Plaintiff does not have objective medical records for the relevant period supporting the extent of pain claimed.[156]   See Newton, 209 F.3d at 459.

The ALJ has discretion to determine Plaintiff's credibility. See Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001); Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991);   Villa v. Sullivan, 895 F.2d 1019, 1024 (5th Cir. 1990).   When the ALJ's evaluation of Plaintiff's subjective complaints is supported by substantial evidence, the court will defer to the ALJ's assessments. Villa, 895 F.2d at 1024.   Thus, the court finds that the ALJ properly considered the effect of pain when determining Plaintiff's RFC and found that Plaintiff's allegations of the intensity and

---

[155]     Tr. 399, 494, 518.

[156]     Tr. 368, 374, 414, 494, 500, 530, 535, 569.  The relevant period for determining disability is June 10, 1998, to December 31, 2000.  Tr. 10. However, the majority of Plaintiff's medical records are from 2001 to 2008; these records are subsequent to the Date Last Insured.  Tr. 357-566.  Plaintiff's medical records for the relevant period span May 6, 1995, to May 16, 1995.  Tr. 197-356.

limiting effects of pain were not wholly credible.

**b.   Effect of pain and weakness on ability to perform sedentary work on a sustained basis**

Plaintiff argues that the ALJ erred in failing to consider the non-exertional impairment of pain and weakness and their effects on Plaintiff's ability to perform work on a sustained basis. When making an RFC assessment, the ALJ should determine a claimant's capacity to perform sustained work-related physical and mental activities. Myers v. Apfel, 238 F.3d 617, 620-22 (5th Cir. 2001). An RFC determination is by definition a determination of an individual's maximum ability to perform sustained work for a forty-hour week. See SSR 96-8p, 1996 WL 374184; SSR 9p, 1996 WL 374185 (S.S.A. July 2, 1996).[157]

There is sufficient evidence to support the ALJ's decision that Plaintiff had the ability to perform sedentary work on a sustained basis at the RFC assessed. Dr. Parr and ME Hoang both agreed that Plaintiff had the ability to sit for the majority of an eight-hour workday and lift up to ten pounds. While VE Ripance testified that someone who required a break to lie down for sixty to ninety minutes in an eight-hour workday could not sustain employment, ME Hoang's review of the record did not reveal that

---

[157]    96-8p states, "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means eight hours a day, for five days a week, or an equivalent work schedule." 1996 WL 374184. SSR 96-9p continues, "RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis . . . . It is not the least an individual can do, but the most, based on all of the information in the case record." 1996 WL 374185.

Plaintiff required such a break.[158]  Morever, ME Hoang testified that there was no such recommendation in the medical record, and there was nothing in the medical record from which he could determine whether it was reasonable that Plaintiff had to lie down.[159]  The ALJ relied on the medical evidence in the record in making the RFC assessment, and the ALJ did not have to give Plaintiff's subjective evidence of pain precedence over medical evidence.  See Loya v. Heckler, 707 F.2d at 211, 214 (5th Cir. 1983) (stating that the ALJ need not give subjective evidence precedence over medical evidence). In addition, the ALJ stated that he had "considered all symptoms" to the extent that they could reasonably be accepted as consistent with objective medical evidence.[160]

Because the court has determined that the ALJ's decision was based on substantial evidence in the record, the court finds that the ALJ did not err in determining that Plaintiff could perform sedentary work on a sustained basis at the RFC assessed.

Accordingly, having found all of Plaintiff's arguments to be without merit, the court **DENIES** Plaintiff's motion for summary judgment.

**D.   Defendant's Motion for Summary Judgment**

Defendant asserts in his motion that the ALJ's decision should

---

[158]    Tr. 46, 48.

[159]    Tr. 46.

[160]    Tr. 13.

be affirmed because the ALJ properly determined that Plaintiff was not disabled for the purposes of Title II of the Act.  The court recognizes the seriousness of Plaintiff's medical conditions. However, the court must review the record with an eye toward determining only whether the ALJ's decision is supported by more than a scintilla of evidence.  See Carey, 230 F.3d at 135.  The court finds more than a scintilla of evidence in support of the ALJ's decision.  Therefore, the court cannot overturn the decision of the ALJ, who is given the task of weighing the evidence and deciding disputes.  See Chambliss, 269 F.3d at 522.

For the reasons stated above, the court finds Defendant satisfied his burden. As a result, the ALJ's decision finding Plaintiff not disabled is supported by substantial record evidence. The court also agrees with Defendant that the ALJ applied proper legal standards in evaluating the evidence and in making his determination.  Therefore, summary judgment for Defendant is proper.

Accordingly, the court **GRANTS** Defendant's motion for summary judgment.

## IV.  Conclusion

Based on the foregoing, the court **GRANTS** Defendant's Motion for Summary Judgment (Docket Entry No. 13) and **DENIES** Plaintiff's Motion for Summary Judgment (Docket Entry No. 15).

**SIGNED** in Houston, Texas, this 27th day of July, 2010.

_____
Nancy K. Johnson
United States Magistrate Judge